Next case, Gorgonzola v. Director United States Office of Personnel Management. And for the benefit of the record, the Court of Appeals docket had reflected Ms. Wigton as being the plaintiff, but we recognize that from the District Court docket, there's been a substitution of another plaintiff, a few other plaintiffs. Ms. Wigton. Good afternoon, I'm Stephanie Marcus from the Department of Justice and I represent Appellant, the Director of the Office of Personnel Management. With the Court's leave, I would like to reserve five minutes for rebuttal. That will be granted. Thank you, Your Honor. As you know, through our letter, we're focused on one issue. One could consider it the main issue, but it's one issue. And we want to try to use our time efficiently and focus on those issues in the panel. I'm sure it has several questions. If I could start, the language at issue here in the notices, it was proposed by the parties, correct? Yes. The District Court never required the parties to put in anything about recalculation or payment, correct? Correct. Okay. My understanding of what's gone on from the plaintiff's point of view is that there's a notice to the class, thousands of class members, that say what OPM said it will do. I use the word will in quotes. Will do certain things. Review, recalculate, pay if required. The record also reflects that the OPM is not doing that now. It says it will not do that. Whether it's because of the hold back order or not, we don't need to discuss why. We just know factually that's the scenario. Let me finish, and I promise I'll respond. Given the understanding that at least I have of this record, the notice to the class is misleading as we sit here today. What was the District Court supposed to do, given its responsibilities to the class? Your Honor, I'd like to answer that in two parts. I think you understand our legal position is that the District Court's notice orders ordered notice only. And that's the transmittal of the notice in accordance with the procedures for identification and notice. Did not incorporate the substance of the notices. So OPM fully complied with those orders. But we also want to point out that the notices themselves did just present what the court ordered. They say this they mentioned the litigation. They say you and each there are a number of different notices in the case, and they're in the joint appendix, and they differ. And some differ in very small ways. They differ in terms of what the individual on the list needed to do. List one, they didn't have to do anything. In fact, it clearly tells those folks, you don't have to do anything, we'll review. The remaining lists require the claimant or beneficiary of the retiree to do something. But otherwise, each one says what OPM will do. And that wasn't because the judge told you all to do it. That's what went out. So I understand your position that technically notice was disseminated. But now the judge has an obligation to be sure those notices are not misleading. What is the judge supposed to do? Your Honor, the notices were not misleading. And they said that you, for example, for list one, for the ones where someone had to return a form. That's everybody other than list one. But for list one, they said you may be or likely are entitled to a recalculation. That doesn't mean that the person will get a recalculated annuity. It doesn't mean at least that OPM will review. Do you agree with that? And, Your Honor, as we pointed out in our brief, OPM was doing so much work in accordance with the court's orders. In this case, it submitted over 13,500 notices. That takes a lot of time. As you can see from the joint status reports in the record, just an extraordinary amount of resources was taken just in negotiating with opposing counsel. What would go in the notices? What were the procedures for identification? It's not like OPM sent out the first notice and then just sat on its hands. Far from it. It has been sending out thousands of notices. And it also has reviewed, at the time we did the briefing, without any March 2022 order in effect yet, it had already voluntarily reviewed 4,068 files for eligibility, transmitted 2,486 notifications of initial determinations of ineligibility, and preliminarily determined that over 1,500 cases may be eligible. Ms. Marcus, I understand you have your construction of the record. Let's assume that we read this less charitably to OPM, that we understand the may be eligible, may review, perhaps not literally false, but at least misleading to some class members. Put yourself in the shoes of the district judge. Let's assume the district, you know, we know that the All Writs Act, in class actions, relief is supposed to be restricted to the minimum necessary to correct the effects of improper conduct under Rule 23. That's NFL, concussion litigation. So the narrowest possible relief to provide the parties. Can you come up with narrower possible relief? And you're not conceding. We're assuming arguendo that the district court finds this notice was misleading and needs to correct it. What narrow relief could the court have ordered or could order on remand other than go and do a recalculation and pay everybody? Your Honor, it couldn't because OPM had fully complied with this order. But if we disagree with that factual premise, if we find that, in fact, the order was misleading, maybe even unintentionally, maybe even because of the ambiguity in the first order, grant me the factual premise, don't fight the hypo. What less than full recalculation and payment could the district court order? Is there some ask you have of if you're going to order any relief, don't order this, order something else? It certainly could have ordered less in terms of, you know, it could have ordered a supplemental notice or something like that to say, go to the MSPB and complain that OPM hasn't done anything yet. And what would the MSPB review? What would the review of that is? Let's assume that were the notice. And that's one of my questions for you. Let's pretend that there was a declaration by a court that said the conduct of OPM here is tantamount to a denial of the claim. Go to OPM. Go to MSPB for review, Ms. Retiree or Mr. Retiree. What's the MSPB going to review? The MSPB can't. Now, either the claimant could go to OPM and say, hey, I got this notice. It said I'm likely to, you know, be eligible for recalculation. I haven't received anything from you. OPM says we're not going to act on this now. We're doing all these other things. We have a holdback order that we think is illegal. We are still in litigation attempting to get that adjudicated. So we're not going to do this now. They then go to the MSPB and say this is, you know, actions unlawfully withheld. And then the MSPB would adjudicate that. All right. So I'm wondering whether the parties, could they use 5 U.S.C. 761 to say, you know, our position is we're not going to process these recalculation requests. Can they say, okay, this Third Circuit litigation is done. We need to go over to MSPB, court claims, all that, Federal Circuit, to sue for agency inaction. I mean, our precedent, you know, Judge Fuentes has this messy opinion. You can sue for agency inaction. Are you granting that we're not going anywhere in this litigation and the nurses could go over to MSPB? Well, Your Honor, yes, they can go over to MSPB to answer your question directly. But we want to – there is another thing that when we're asking this Court to do it as part of its consideration of the ancillary enforcement jurisdiction here is to hold that the district court necessarily lacked jurisdiction to enter the holdback  order. What OPM wants to do is pay 100 percent. We don't want to make anyone go – the people – we are now complying with the March order. We have paid the active – the nurses who are receiving – are actively receiving annuities. We want to pay them 100 percent. But let's say we find we have – we don't have jurisdiction to review the holdback order. But if you go ahead and – let's say it's 30 percent that's getting held back. Will you just comply and pay over the 70 percent and say the rest of this is subject to dispute? Well, see, that's the problem, Your Honor, is that the holdback order that the agency has objected to, the district court never had jurisdiction to enter in the first place. And I'm not talking about the merits of the holdback order right now. We're talking about jurisdiction. I've got it. But maybe we don't have jurisdiction to review it, whether or not the district court has jurisdiction. If we're in that position where we can't review the holdback order merits, what are you going to do? Are you going to say, okay, therefore we'll give zero percent? Or are you going to give 70 percent and then worry about the legality of the holdback order some other way? Well, Your Honor, right now we're under – we are complying with a district court order and we would – Are you making holdbacks for people who are being paid? Yes. You are. Yes, we are. And we are asking that the court vacate – first of all, our – as you know from the briefs and I understand, you did not want us to focus on this. We are asking that the court revamp with instructions to dismiss the whole case. But with respect to – and we think that issue comes up because that is one of the reasons the district court lacked jurisdiction to enter an indisputably appealable order. It's the March 2022 order. It's an injunction. It – the district court numerous times disavowed jurisdiction over recalculation and payments. And in fact, it – not just disavowed, it dismissed the claims in 2013. It issued – No, we know that. But unfortunately, the circumstances as we sit here today is we have thousands of that OPM is going to take action. They may or may not get paid. But that's because language was offered to the court to do something that maybe it couldn't do in its plenary authority. But the parties agreed that's what we're going to do. Tell the class. I'm back to what I asked and Judge Bevis is asking too. What is the district court supposed to do? Well, we asked the district court to modify or vacate the holdback order because OPM made an additional concession that it would keep track of the payments made to class members. OPM wants to pay them 100 percent. And – but nevertheless, it would keep an accounting of the 30 percent in case there's a future potential award. The district court doesn't have jurisdiction over payments now to order OPM to hold back part of that. And if you look at the March 2022 order, which is an injunction, part of that injunction is the holdback order. So we think the court has jurisdiction to today, you know, ask remand to the district court and vacate the holdback and the March order. And OPM would pay the 30 percent that's been withheld to the people it's already paid and start doing to individuals found eligible in the future, it would start paying 100 percent. And I see my time – I think Judge Bevis has some questions for you. I just want to ask you, if you'd like to get your take on this, this is a notice from OPM and it states, if you are eligible, OPM will recalculate your annuity and send you an agency decision. You don't have to ask OPM to do so. And as I understand it, almost five years went by and nobody heard a thing. And, Your Honor, this – certainly OPM would have liked to have done this earlier, but there was – and we tried with the prior appeal to get the holdback adjudicated because if we had – if the court were able to, you know, enter a final judgment on the merits, OPM will comply with – once that's adjudicated. But this is in the middle of litigation and it's something where we asked the court and there's – and again, it's not that OPM wasn't working on all of these different things at the time. There were numerous notice orders because it had to send out notice to other potentially eligible individuals. OPM has very limited resources and if you look at our statement regarding compliance, there was someone who had to come back out of retirement in 2021 just to work on this case. And we have a team of 25 people working on this case trying to get people their money and it's unfortunate that the litigation took this long. There were a number of factors, you know, that went into it. I don't know if in the last appeal we had a government shutdown in the middle of the appeal. It delayed the argument and that may be, you know, one reason. If that hadn't happened, it may – this court may not have determined that it was good. Wouldn't one looking at this thing surmise that because you didn't get a ruling from the last panel, which my good friend Stephanos Vivas was on, because there was a lack of jurisdiction. The activity that seems to justify the inaction at some level is the Hobock order. It sounds like self-help that because you couldn't get review before, there hasn't been sort of the expeditious treatment that Judge Fuentes is expressing a concern about. How – tell us why that's a mistaken impression. Because, Your Honor, the notice orders themselves, which were entered prior to the March 2022 order and compelled action by OPM, OPM had to comply with those, did not finish that until March 2020. And there – this court made clear in the last – in its opinion, in the last case, it said the reason this is moot is because the notice order can no longer harm OPM. Well, OPM – No, I said it was moot because the notices were out. The notices – well, OPM had complied, but when we asked the court to also there look at the Hobock order and say that the notice orders weren't moot because we had, you know, future notice issues and because the Hobock would continue to apply, the court said that the Hobock didn't affect the substantive relief in the case because payments were no longer at issue, that the case was only about notices. So the district court's order actually conflicts with this court's understanding, you know, with the law of this case according to this court. And under – and, of course, its own understanding. And there's a – the CSRA is another specific federal statute that precluded the court from entering this order. I just wanted to say some more questions. Sure. I wanted to read this. Let me see what your take is on it. If recalculation shows that you're entitled to an increased annuity, OPM will send you past due benefits retroactive to the nurse's retirement date. Is that happening? Well, it is now because we – OPM is complying with the March 2022 order. So benefits being paid. Yes. And retroactively if necessary. Yes, yes. And prospectively they're being recovered. Not everybody is caught up. Not everybody. We are still in the midst. But when OPM has finished all the cases of active nurse annuitants and they – Is that list one? Yeah. That's – and so they're moving on to like survivor annuitants. And then after that, beneficiaries. It's a complicated process. But they did do the active cases first for nurses who are – and yes, those have been. But the 30 percent has been held back. And we would like those people who have been determined to be entitled to get the 30 percent as well. Thank you. All right. We'll have you back on rebuttal. Thank you. Thank you. May it please the Court. Maureen Davidson Welling on behalf of the plaintiff at police and the class. The district court's March 2022 order was appropriate and necessary to effectuate prior court-ordered notice relief and to protect the – and vindicate the court authority, the district court's authority, both of which were threatened by OPM's malfeasance. Now, I heard Ms. Marcus say that OPM was busy. The record does not support that. The notices were misleading because OPM did not act. And in fact, as identified in the district court's opinion, OPM had – once its deception was uncovered, that it had not been acting despite telling the court for years that it would act and putting it in all of these notices, once its deception was uncovered, OPM said it wasn't going to act. It said it wasn't going to act. And the district court's opinion identifies that and says that, you know, it was told it was because of the holdback order. Okay. Do you agree that under our All Rights Act precedent, any remedy has to be ancillary to the primary right here notice and has to be the narrowest possible relief? So let me address that in two parts. So the All Rights Act does provide courts with the authority to issue writs that are necessary or appropriate in aid of their jurisdiction, right? So, yes, they are ancillary in the sense that they are geared towards protecting the integrity of court orders. And in the NFL, we said, okay, the district court went too far, it wasn't necessary, it wasn't as narrow as it could have been to support. That being said, if you go back to, for instance, the Supreme Court statements in U.S. versus New York Telephone Company, what you have, it doesn't have to be necessary in the sense that you cannot physically accomplish it otherwise, right? And the statute is necessary or appropriate in aid of jurisdiction. But we're bound by our decision of four years ago. You are, yes, that is a precedent. So let me float some other possible relief here. District court could shame OPM. They could say, contact the nurses, tell them, look, we misled you. We're not, in fact, recalculating this. Here's how you go to the Merit System Protection Board. Here's how you sue us under 5 U.S.C. 706 for inaction. It could say, okay, your route is foreclosed here. This is the proper remedy. Now, why wouldn't that be, you know, you could have let them sue for agency inaction. They could have promissory estoppel. They could impose sanctions. Why are none of those enough that here we have to go beyond a notice-type relief to a substantive. You win the whole lawsuit. You get all the money you wanted because the notice was misleading. Well, the district court's 2017 Equal Protection ruling ordered remedial notice to the class, right? That is the order was remedial notice, and that's at JA 60. And what happened, the way that OPM acted ended up depriving the class of the benefit of that notice, right? They, you know, as surely as if it had never sent the notices, you know, class members were left without any knowledge of their rights and how to get the benefits. Now, that was a harm not only to the class, who has since waited five years, five years before a single person was paid. Okay, so fine. The district court can order some things. Could the district, you know, if ordering the substantive relief and monetary payments, which the district court did not have jurisdiction to do at the start of this case, is appropriate, does that mean any time, you know, you're litigating against the IRS, the IRS says something misleading in a notice claim and the IRS refuses to act, suddenly you can bypass ordinary IRS tax credit or refund procedures and the court can just order monetary relief there? This, I would submit to you that this is a very unusual circumstance and that this is not what happened here was an agency that did things that, one, created a harm to the tribunal, right? The OPM was not respectful to this tribunal. It flouted its authority. It engaged in basically in sanctions for the lawyers. Might be appropriate. Well, I submit to you that the best, you know, OPM made commitments to the court that it would take these actions, right? And the most narrowly tailored and appropriate redress for that action was and what also was appropriate because it made the notices non-misleading, one bird kills all stones, was to enforce the procedures in the notices and to enter the All Rights Act. That was. So is that the problem here? Judge Peebles makes the appropriate point, of course, that the district court does not have the jurisdiction to order repayment as a matter of first impression. It, in fact, dismissed that request for relief in the complaint, right? The district court held that it did not have original jurisdiction to order recalculation. So the only reason why we've been talking about this issue and action of recalculation, review, possible payment, if appropriate, is because of what was put in the notice the court issued. Is that correct? Is that the only reason why we're talking about this? And now there is not consistent behavior by OPM. Isn't that what brings you here? That is part of what brings us here. But there was a multi-year period where the district court was misled. And the result of that has been five years of an elderly and aging class who believed that these actions were going to be taken if they just waited. So, yes, it was those misrepresentations in the notice, but it's part and parcel of this broader swath of misconduct by OPM. And that goes back to what Judge Bevis is asking, then what's the remedy? That's narrowly tailored to cure the misconduct. That's what NFL says we have to do. And I submit to you that the narrowest relief was exactly the relief that the district court ordered. Why? Because all it did was, so OPM had misrepresented what it was going to do. All it did was hold OPM to the commitments that it had made over a course of three years during the notice development process. And the district court exercised due restraint in crafting its order. Like, it did not invade the administrative process at all. Like, under what the court did, there's, you know, the CSRA channels benefit determinations, right, the specific amount that individuals get. The district court did not decide whether any specific individual would get benefits. It doesn't decide the amount of those benefits. It would never review any benefit determination that OPM made because all of those judgments are still left to OPM. All of that goes through the administrative process. If we were to rule for you how we would avoid the bootstrapping where you just do this as a two-part process. Step one, the district court says, send a notice saying you're going to do whatever you're legally obligated to do, even though I can't make you do it. And then if they don't do it within, it sounds like a couple of years, I don't know how many years, then you come back with step two, oh, you didn't do what you said you would do in the notice. If you didn't have jurisdiction at the beginning, how does the Texas two-step get you around that? So you have to, right, I mean, here I think the question of sort of the Texas two-step, one, this is what I would submit to as a very unusual situation where you have a federal agency that proposed this language. It proposed it to the district court. It proposed it to the plaintiffs. It put it in. It made the representations in the first place, right? And that. So you would be comfortable with our saying a district court can't just say this, a district court can't just make it. It's more a situation where the federal government volunteers something and then puts itself in a much, puts the litigants in a worse position? Well, it's really, I mean, I think in all of its injunction, primarily it focuses, you know, it's focused on redressing in large part the harm to the court, right? Like if you look at Kokanen and those cases, they recognize that there's all, and, you know, courts have the ability to use ancillary enforcement jurisdiction to vindicate their authority, to effectuate their decrees, right? To preserve. Let me give you a slightly different hypo. Let's say the government, you have a court hearing. There's a suit against the government. The government says, you know, okay, we're going to send some notice that people may be entitled to some relief. Okay? So the notice goes out. Two months later, government counsel comes in and says, I'm sorry, we didn't check with our supervisors. In fact, there's a sovereign immunity defense here that we want to raise, and this is exclusively within the court of claims jurisdiction. I should not have made this representation to the court. In that situation, could the court say, nope, two months ago you said it to me. I'm very offended that you're taking this back. Therefore, all RITS Act allows me to order you to do that. Is that distinguishable from this case or not? And if so, how? Well. Some line attorney goes beyond what the line attorney is supposed to say, but then comes back to the court in the space of a couple months and says, let's correct the notices. We shouldn't have said this. Something else, follow-up notice, but we're not waiving sovereign immunity. The exclusive forum here is under the little Tucker Act in the court of claims or something. I think it's very difficult to understand what happened here as anything where it was a mistake. These were authorized agents of the U.S. agency who made these representations over a course of years. All right. So we should not be applying this to situations of a misspeech or a slip or anything like that, that you don't want to just turn anything a government attorney says into we got you. I don't know. I mean, I think this might depend on the facts that are really before, but here what you have is fundamentally distinguishable from the situation, the hypothetical that you were raising, because you have this. These were deliberate commitments made by an authorized agent of the United States government, and they were made repeatedly over to the judiciary, no less, over the course of three years. And they were otherwise statutory obligated to do it. That is also correct. These were also OPM's mandatory statutory obligations. Well, you've been speaking a little bit about all writs and I heard the other jurisdictional grounds that might exist. What about just Rule 23? Could the district court relied on Rule 23 as the, I'll use the word fiduciary of the class, but I'm using it in a very unique way to say that it is obligated, and there's place law out there from our circuit that says it's obligated to make sure that the class is not misled and notices are accurate. So could the district court have skipped ancillary enforcement jurisdiction, skipped all writs act, and just gone straight into Rule 23? I'm not sure that I see that those, so I think that the, I think that those Rule 23 obligations exist, and they existed for the district court. But I think they dovetail with the all writs act authority. Does the court need to rely on all writs act or ancillary enforcement jurisdiction? Because ancillary enforcement jurisdiction and all writs act authority are different. So, and then we have Rule 23 as something else. Yeah. I mean, we have not addressed that issue in our briefing, and I hesitate to give an answer when I'm not familiar with those cases. I would be happy to submit that. Have you found a case under Rule 23 or the all writs act or ancillary authority, they've said that's anything different, that's even close to this one? This case is, well, you know, the closest case to this was the City of Cherokee case that we cited out of the Eighth Circuit, which in that case, there had been, the Eighth Circuit had ruled that their, you know, the train company wanted to close down a rail line, and it got to the Eighth Circuit, and the Eighth Circuit said, no, the standards aren't met, you can't do that, go back, you know, it remanded for further consideration. Within like a week or two of that happening, the rail line turned around and hiked up the surcharge to basically kill the line anyways. And that, now, because it did that through a tariff, which were generally unreviewable, they just, you know, they said, okay, this is precluded, you can't review it. The Eighth Circuit said, no, we can review it, and this was intended to interfere with our jurisdiction and over this decision, and so they entered an all writs injunction, and they said, you know, until sort of this is, you know, were they, so they entered that relief, and they're, you know, they're like, here, the defendant didn't deny that they had acted because of disagreement with the court order, right? So that case is probably the closest, but these are very unusual facts, right? This, you know, what has happened here is really, I would submit to, is really a long track record of misrepresentations in the district court, even going beyond the most recent ones, and it is far outside the norm. So thank you. In closing, we would just ask that you affirm the district court's ruling, that you deny OPM's appeal in all respects, and that you remand this case for additional proceedings in the district court, including a decision on attorney's fees. Thank you. Thank you. Okay. Do we hear OPM? Would you like to respond? Oh, with your Honor's permission. I know I exceeded the time. I once had a friend who chose not to deliver a remodeled summation, so that's why when you were still comfortable there, I thought maybe you were going to decline, but here you are. Go right ahead. Thank you, Your Honor. Okay. First, I just wanted to ask the Court to please look at the citations in our briefs to the joint appendix, both to the joint status reports, which each have a footnote which made very clear to the district court that OPM by agreeing to the notice language. OPM, of course, always made clear it didn't agree the court had jurisdiction at all, but it issued the notices under objection. And each footnote told the court that it didn't waive any right to appeal and it didn't waive any rights to jurisdiction. And that there are other sites in our brief, too, in the record where OPM made clear to the court that it did want to recalculate, to do the recalculations, determinations of eligibility, all of that, the payments if someone is eligible, but not on subject to conditions by a court that doesn't have jurisdiction. And I also wanted to emphasize that there are no cases cited by the district court or plaintiffs that involve an exercise of ancillary enforcement jurisdiction where a court doesn't have jurisdiction of the original action as a whole, like of the entire action. Those may be cases where the court exceeds its original jurisdiction, but it has jurisdiction of an action. Here, the district court dismissed the very claims that it's now ordering OPM to do. So why did OPM put them in the notice? You may not be able to answer that question because I don't know if you were described. Well, I mean, and again, this was a long process. I was not district court counsel, and I will say, you know, our district court counsel is one of the most honorable people, and I'm sure this is not. Yeah, and this is not, but I think, you know, here there was an order by a court that we had to agree to language in the notice. So I think the parties, there certainly was, you know, there was a product of negotiation. Okay. And we got the notices out, and that told, and, you know, the OPM would get to the, what OPM wanted was the chance to challenge the whole back order in court and get, and challenge the court's, you know, CSRA jurisdiction. What is the best place to look in the record to suggest that this is really being done under protest and not something that you were affirmatively agreeing to such that you should be held to it? And if I could just, just to clarify, you're asking, we're in the record to say we're, with the language we put in the notice is over objection. Right. Yeah. Because you were just objecting to have to participate in the process entirely, not you personally. OPM. Yeah. So now I was not, you know, as appellate counsel, I can't say, you know, what was proposed and rejected by the other side. That's not what you're saying. You know, I don't know. His question is about the footnotes in the joint status reports where OPM makes its representations. We're not waiving anything. Yes. But what I'm asking Judge Bibas is if he's asking you, are you saying about the whole participating writ large or about the specific representations in the notices? Because I understood that footnote to be an objection to participation in a general sense as compared to the contents of the notice. Oh, it was an objection to any of the court's prior orders. So the notices were just telling, and again, we don't think there's anything to enforce, even if the judge did have jurisdiction, which he did not, because the notices were not incorporated into the notice orders. They were orders to transmit according to the joint status report. But even if the court had jurisdiction, again, there's no time limit on this. OPM did comply with many of the things set forth, like getting ready to do the payments, doing eligibility determinations. But the footnote says, nor does she waive her right to appeal the prior rulings of this court, including but not limited to whether a defendant has a legal obligation to provide individualized notice. Okay, you haven't waived your right to appeal. Now, you haven't gotten any relief on those things on appeal. But is there anywhere where you say, look, we think this notice language might be misleading, wrong, we're not conceding, we actually have to do this, we're doing this under protest, that the substance of the notice is not something we're agreeing to, but we're doing it because the court is effectively telling us to? Or some other way in which you're taking substantive issue with the content as opposed to just, hey, you're all rights reserved. I mean, Your Honor, I don't know if that would have been accepted, or even it may well have been proposed and not accepted. I just don't know. And I have no knowledge of that. But I do know as written, it doesn't read as an endorsement either. It says the court has ordered this. And that's actually true. The best citation you'd like us to look at when we go back in conference? The best citation in the record? Yes. Okay. So I'll give you one, and I would ask, we do have in our brief a list of all the pages of the Joint Status Report where we're in the brief. Okay. Yes, I can. I can give you an example. It's JA1011. Yes, that's the one I'm looking at now. And they're roughly the same throughout each of the reports, right? Yes, yes. But the important thing, oh, yes, I actually had marked the status report sites in my brief. We have on page 12 of our opening brief, and you're right, Judge Schwartz, there is 1011 is the first one, but then we have numerous other sites. Yes. For the purpose of this discussion, the language is the same. Okay. Got it. That's great, Your Honor. Okay. And just finally, we understand it's an unusual case. We are complying with the order now and would like to, again, just reiterate again, we want to pay 100 percent of the amounts. And we think that what's happened here shows the problems with the court's error in assuming jurisdiction in the first instance. This should, you know, to try to carve out notice. That's why this is so unique. It doesn't work. There was never jurisdiction in the first place. And all of this could have gone forward before the MSPB and the Federal Circuit. And those are the adjudicators. Are you willing to concede that all this still could, that the agency is not acting and they can take an APA challenge to the denial of action? They could take a challenge. Those people whose hasn't been adjudicated, they could also go and object to the 30 percent withholding. Thank you, Your Honor. Thank you. We thank counsel for their hard work on this case. And the court will take the matter under review.